FILED
CLERK, U.S. DISTRICT COURT

MAY - 7 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DUSHUN WHITE,                        )   NO. CV 07-6388-GAF(E)
                                     )
                    Petitioner,      )
                                     )
     v.                              )   ORDER ADOPTING FINDINGS,
                                     )
BEN CURRY, Warden,                   )   CONCLUSIONS AND RECOMMENDATIONS
                                     )
                    Respondent.      )   OF UNITED STATES MAGISTRATE JUDGE
                                     )
_____)


     Pursuant to 28 U.S.C. § 636, the Court has reviewed the
Petition, all of the records herein and the attached Report and
Recommendation of United States Magistrate Judge.  The Court approves
and adopts the Magistrate Judge's Report and Recommendation.


     IT IS ORDERED that Judgment be entered denying and dismissing
the Petition with prejudice.
///
///
///
///

1      IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2  the Magistrate Judge's Report and Recommendation and the Judgment

3  herein by United States mail on Petitioner and counsel for

4  Respondent.

5

6      LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8      DATED: _____ 5/6 _____, 2008.

9

10

11

12                    GARY A. FEESS
              UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10

11   DUSHUN WHITE,                    )    CV 07-6388-GAF(E)
                                      )
12            Petitioner,             )
                                      )
13      v.                            )    REPORT AND RECOMMENDATION OF
                                      )
14   BEN CURRY, Warden,               )    UNITED STATES MAGISTRATE JUDGE
                                      )
15            Respondent.             )
     ─────────────────────────────── )

16

17       This Report and Recommendation is submitted to the Honorable

18   Gary A. Feess, United States District Judge, pursuant to 28 U.S.C.

19   section 636 and General Order 05-07 of the United States District

20   Court for the Central District of California.

21

22                          **PROCEEDINGS**

23

24       Petitioner filed a "Petition for Writ of Habeas Corpus By a

25   Person in State Custody" on October 1, 2007.  The Petition challenges

26   a decision of the California Board of Parole Hearings finding

27   Petitioner unsuitable for parole.  Respondent filed an Answer on

28   December 10, 2007.  Petitioner filed a Traverse on December 31, 2007.



**BACKGROUND**

On January 18, 1984, Petitioner and some companions approached a car occupied by several persons, intending to commit robbery (Respondent's Lodgment 3, p. 2; Respondent's Lodgment 4, pp. 6-7). During the robbery, Curtis Martin was shot and killed (Respondent's Lodgment 3, p. 2; Respondent's Lodgment 4, pp. 6-7). On September 18, 1984, pursuant to a plea bargain, Petitioner pled guilty to one count of second degree murder, and admitted an allegation that a principal had been armed with a firearm in the commission of the offense (Respondent's Lodgment 1; Respondent's Lodgment 3, p. 1). Petitioner received a sentence of fifteen years to life (Respondent's Lodgment 1).

On September 15, 2005, Petitioner appeared before the California Board of Parole Hearings ("Board")[1] for a subsequent parole hearing (Respondent's Lodgment 4). The Board denied parole for one year (Respondent's Lodgment 4, pp. 61-66).

Petitioner filed a petition for habeas corpus in the Los Angeles Superior Court, which that court denied in a reasoned decision (Respondent's Lodgments 5, 6). Petitioner filed a habeas corpus petition in the California Court of Appeal, which that court denied in a brief order (Respondent's Lodgments 7, 8). Petitioner filed a habeas corpus petition in the California Supreme Court, which that

---

[1]   On July 1, 2005, the California Board of Prison Terms was abolished and replaced by the California Board of Parole Hearings. <u>See</u> Cal. Penal Code § 5075(a).



2

1 | court denied summarily (Respondent's Lodgments 9, 10).

2

3 | **THE HEARING AND DECISION**

4

5 | **I.    The Hearing**

6

7 | Petitioner appeared at the hearing on September 15, 2005,

8 | represented by counsel.  The presiding commissioner read into the

9 | record Petitioner's version of the commitment offense, taken from the

10 | Board's 2004 Report.  According to Petitioner, he and his crime

11 | partners decided to rob Martin and the passengers in Martin's car

12 | (Respondent's Lodgment 4, p. 7).  Petitioner said that, when

13 | Petitioner ordered Martin to give Petitioner money, Martin made hand

14 | gestures assertedly causing Petitioner to believe Martin was trying to

15 | grab Petitioner's gun (id., pp. 7-8).  Petitioner allegedly jumped in

16 | response, pulling the trigger and shooting Martin (id., p. 8).

17 | Petitioner said it was never Petitioner's intention to kill anyone

18 | that night, only to rob (id.).  At the time of the offense, Petitioner

19 | was an active gang member, and was on parole (id., p. 50).

20

21 | Petitioner's criminal history included a gang-related juvenile

22 | conviction for assault with a deadly weapon with great bodily injury,

23 | resulting in a commitment to the California Youth Authority (id.,

24 | pp. 9-10).  Petitioner had suffered an adult conviction for sale or

25 | transportation of PCP (id., pp. 10, 13).  In November of 1983, a

26 | couple of months before the commitment offense, Petitioner and a

27 | companion entered a woman's apartment and took items from the woman

28 | and a female friend at gunpoint (Respondent's Lodgment 2).  In



1  December of 1983, Petitioner and others returned to the apartment and

2  took more items (id.).  The female victim tried to flee by jumping out

3  a second story window, but was dragged back into the residence, where

4  she was raped by two of the other men (id.).  In April of 1984, while

5  Petitioner was awaiting trial in the murder case (the commitment

6  offense), Petitioner pled guilty to two counts of burglary in

7  connection with the 1983 events, admitted the use of a firearm, and

8  received a six-year term (Respondent's Lodgments 1, 2; Respondent's

9  Lodgment 4, p. 43).

10

11      Petitioner earned a GED while in prison, and took FEMA classes

12  (Respondent's Lodgment 4, pp. 12, 23).   Petitioner worked as a porter

13  while in prison, and had jobs in culinary, welding and textiles (id.,

14  pp. 21, 35-36).  Petitioner's work reports were good (id., p. 23).

15  Petitioner also had obtained a license as a pasteurizer, and had

16  worked at a prison dairy (id., pp. 23-24).  Petitioner had taken

17  classes in health, life skills, art, and entrepreneurship (id.,

18  pp. 26, 37-38).

19

20      Petitioner admitted marijuana use and alcoholism (id., pp. 13,

21  25).  Petitioner had been a member of Narcotics Anonymous for 11

22  years, and also had participated in Alcoholics Anonymous (id., pp. 20,

23  25).

24

25      Petitioner acknowledged that, because he went to prison at age

26  18, he did not have much of a social history (id., p. 15).  However,

27  Petitioner contended he had a strong and supportive family and good

28  family relationships, and said he had "never assaulted anyone as far



1   as females, my family members" (id.).  On parole, Petitioner planned

2   to reside with his aunt (id., p. 16).  Petitioner had a job offer at a

3   shoe company, and had promised a local pastor that Petitioner would

4   help in the Narcotics Anonymous and youth programs (id., pp. 16-17,

5   19).  Petitioner presented to the Board a petition signed by 36

6   community members attesting that they would assist Petitioner to

7   reenter society (id., p. 18).

8

9     Petitioner's prison disciplinary history included nine

10  disciplinary convictions, or "115's" (id., pp. 26-27).[2]  The most

11  recent was a 1999 conviction for refusal to report or participate in a

12  work assignment, which was reduced to a "128," or chrono (id.,

13  p. 27).[3]  Among the other disciplinary convictions was a 1995

14  conviction for attempting to conduct a business without the warden's

15  authorization (id., pp. 27-30).  The business, which Petitioner

16  christened "Big Happy Enterprises," involved the acquisition of

17  mailing lists which Petitioner planned to use in a connection with a

18  direct mail business (id., p. 29).  Petitioner also had a disciplinary

19  conviction for fighting and two convictions for possession of pieces

20  of metal "weapon stock" (id., pp. 30-31).  With respect to "weapon

21  stock" convictions, Petitioner claimed that he was only the "holder"

22  for the weapons (id., pp. 31-32).

23  ——————————————

24      [2]   The California Department of Corrections and
Rehabilitation uses Form 115 to report prisoners' rules

25  violations.  See Lira v. Herrera, 427 F.3d 1164, 1167 n.4
(9th Cir. 2005).

26

27      [3]   The California Department of Corrections and
Rehabilitation uses counseling "chronos" on Form 128 to

28  record instances of minor misconduct.  See Cal. Code Regs.
tit. 15, § 3312(a)(2).



1    Petitioner had been a gang member from the time he was 12 or 13
2    years old (id., p. 33). Petitioner's gang name was "Big Happy" (id.,
3    pp. 43, 54). Petitioner said he remained a gang member for the first
4    few years he was incarcerated, but allegedly disassociated from the
5    gang in 1996 or 1997, which Petitioner admitted was after he had
6    received the disciplinary report in connection with "Big Happy
7    Enterprises" (id., pp. 43-44, 52-53). Petitioner said that his
8    disciplinary conviction for possession of weapons stock resulted from
9    having held a knife in his cell as part of his gang duties (id.,
10   pp. 52-53). Petitioner's file contained a "chrono" stating he no
11   longer was considered an active gang member (id., p. 33). Petitioner
12   said he had not been validated or debriefed as a gang member by
13   investigative services (id., pp. 33-34).[4] Petitioner denied any gang
14   connection with his putative business, "Big Happy Enterprises," and
15   claimed that he gave the business Petitioner's assertedly former gang
16   name because Petitioner wanted to transform "something negative to
17   something positive" (id., pp. 43-44).
18   ///
19   _____

20   [4]    "Validation" is the process whereby prison officials
     determine that a prisoner is a gang member or associate. See
21   Lopez v. Valdez, 2007 WL 1378017 at *1 (N.D. Cal. May 10, 2007);
     Cal. Code Regs. tit. 15, § 3378(c). "Debriefing is the process
22   by which a gang coordinator/investigator determines whether an
     inmate/parolee (subject) has dropped out of a gang." Cal. Code
23   Regs. tit. 15, § 3378.1(a). A prisoner may be debriefed only
     upon his or her request, although staff may ask if the prisoner
24   wants to be debriefed. Id. The object of a debriefing is to
     learn enough about the prisoner and the prisoner's gang to:
25   (1) allow staff to determine whether the prisoner has dropped out
     of the gang; and (2) to allow staff to reclassify the prisoner as
26   appropriate. Cal. Code Regs. tit. 15, § 3378.1(b). A debriefing
     must occur before an inmate may be identified as a gang member
27   who has discontinued his or her gang affiliation. See Cal. Code
     Regs. tit. 15, § 3378(c)(5).
28



1    A 2003 psychologist's report opined that Petitioner would pose a

2  risk for future violence no greater than that of the average citizen

3  within the community (<u>id.</u>, p. 37).

4

5    Petitioner told the Board he had participated in self-help while

6  in prison, but initially asserted that he had not done any self-help

7  related to crimes against women, contending he had committed no crimes

8  against women (<u>id.</u>, pp. 44-46).  Under his attorney's questioning,

9  Petitioner agreed that he would benefit from some self-help regarding

10 relations with women (<u>id.</u>, pp. 49-50).  Petitioner expressed remorse

11 for the murder and said he accepted full responsibility for his crimes

12 (<u>id.</u>, pp. 51-52, 58-60).

13

14 **II.   <u>The Board's Decision</u>**

15

16    The Board determined that Petitioner was unsuitable for parole

17 because he would pose an unreasonable risk of danger to society or a

18 threat to public safety if released from prison (Respondent's Lodgment

19 4, pp. 61-62).  The Board relied, <u>inter alia</u>, on the commitment

20 offense, Petitioner's criminal history, and Petitioner's institutional

21 behavior (<u>id.</u>).  The Board was troubled by Petitioner's statements

22 regarding the robbery and rape incident, describing as callous

23 Petitioner's act of stealing the victim's belongings while she was

24 being raped (<u>id.</u>, p. 62).  More generally, the Board was troubled by

25 Petitioner's history of harming people with no thought to the

26 permanent damage Petitioner might have caused (<u>id.</u>, p. 63).

27 ///

28 ///



7

1     The Board commended Petitioner for his participation in Narcotics

2 Anonymous, Alcoholics Anonymous and various classes, and for obtaining

3 his GED and earning a good work record (<u>id.</u>, pp. 63-64). However, the

4 Board expressed concern that Petitioner had gang-related disciplinary

5 convictions and "SHU" (security housing unit) terms, and that

6 Petitioner did not relinquish his gang involvement until either 1997

7 or 1999 (<u>id.</u>, p. 64). The Board recommended that Petitioner undergo a

8 gang debriefing, to show that Petitioner "really intended to separate

9 [himself] from criminal thinking" and gang-related violence (<u>id.</u>,

10 pp. 64-65).

11

12     The Board also indicated it was "very much" concerned about

13 Petitioner's attempt to start a business using a gang name under which

14 Petitioner had done some "pretty bad things" (<u>id.</u>, p. 65). The Board

15 indicated that everybody knows a prisoner cannot run a business in

16 prison, and expressed concern that the business would have involved

17 obtaining the names and addresses of civilians, which Petitioner could

18 have sold to other inmates (<u>id.</u>). The Board doubted that it had heard

19 the "full story," and thought that Petitioner's explanation concerning

20 the business did not "ring true" (<u>id.</u>).

21

22                         **STANDARD OF REVIEW**

23

24     A federal court may not grant an application for writ of habeas

25 corpus on behalf of a person in state custody with respect to any

26 claim that was adjudicated on the merits in state court proceedings

27 unless the adjudication of the claim: (1) "resulted in a decision that

28 was contrary to, or involved an unreasonable application of, clearly



1  established Federal law, as determined by the Supreme Court of the

2  United States"; or (2) "resulted in a decision that was based on an

3  unreasonable determination of the facts in light of the evidence

4  presented in the State court proceeding."  28 U.S.C. § 2254(d) (as

5  amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002);

6  Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S.

7  362, 405-09 (2000).

8

9      "Clearly established Federal law" refers to the governing legal

10  principle or principles set forth by the Supreme Court at the time the

11  state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63,

12  71-72 (2003).  A state court's decision is "contrary to" clearly

13  established Federal law if: (1) it applies a rule that contradicts

14  governing Supreme Court law; or (2) it "confronts a set of facts . . .

15  materially indistinguishable" from a decision of the Supreme Court but

16  reaches a different result.  See Early v. Packer, 537 U.S. at 8

17  (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

18

19      Under the "unreasonable application prong" of section 2254(d)(1),

20  a federal court may grant habeas relief "based on the application of a

21  governing legal principle to a set of facts different from those of

22  the case in which the principle was announced."  Lockyer v. Andrade,

23  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

24  U.S. at 24-26 (state court decision "involves an unreasonable

25  application" of clearly established Federal law if it identifies the

26  correct governing Supreme Court law but unreasonably applies the law

27  to the facts).

28  ///



9

1    A state court's decision "involves an unreasonable application of

2  [Supreme Court] precedent if the state court either unreasonably

3  extends a legal principle from [Supreme Court] precedent to a new

4  context where it should not apply, or unreasonably refuses to extend

5  that principle to a new context where it should apply."  <u>Williams v.</u>

6  <u>Taylor</u>, 529 U.S. at 407 (citation omitted).

7

8    "In order for a federal court to find a state court's application

9  of [Supreme Court] precedent 'unreasonable,' the state court's

10 decision must have been more than incorrect or erroneous."  <u>Wiggins v.</u>

11 <u>Smith</u>, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

12 court's application must have been 'objectively unreasonable.'"  <u>Id.</u>

13 at 520-21 (citation omitted); <u>see also</u> <u>Clark v. Murphy</u>, 331 F.3d 1062,

14 1068 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003).

15

16    In applying these standards, this Court looks to the last

17 reasoned state court decision.  <u>See</u> <u>Franklin v. Johnson</u>, 290 F.3d

18 1223, 1233 n.3 (9th Cir. 2002).  Where no such reasoned opinion

19 exists, as where a state court rejected a claim in an unreasoned

20 order, this Court must conduct an independent review to determine

21 whether the decisions were contrary to, or involved an unreasonable

22 application of, "clearly established" Supreme Court precedent.  <u>See</u>

23 <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).

24

25                          **PETITIONER'S CONTENTIONS**

26

27    Petitioner contends:

28 ///

10



1    1.   The evidence allegedly was insufficient to support the denial

2  of parole (Petition, Grounds One, Three, Four);

3

4    2.   The Board's decision allegedly was based on a "pro forma"

5  hearing, and allegedly was objectively unreasonable in light of the

6  evidence (Petition, Ground Two); and

7

8    3.   The Board allegedly abused its discretion by disregarding the

9  "matrix" in deciding to deny parole (Petition, Ground Five).

10

11                              **DISCUSSION**

12

13    For the reasons discussed below, the Petition should be denied

14  and dismissed on the merits with prejudice.[5]

15

16  **I.   <u>Governing Legal Standards</u>**

17

18    "There is no constitutional or inherent right of a convicted

19  person to be conditionally released before the expiration of a

20  valid sentence."  <u>Greenholtz v. Inmates of Nebraska Penal and

21  Correctional Complex</u>, 442 U.S. 1, 7 (1979) ("<u>Greenholtz</u>").  In some

22  instances, however, states may confer a liberty interest in parole

23  under state law.  <u>Id.</u> at 12.  Section 3041(b) of the California Penal

24  Code provides, in pertinent part:

25  _____

26         [5]    The Court has read, considered and rejected on the
    merits all of Petitioner's contentions.  The Court discusses
27  Petitioner's principal contentions herein.

28



                                 11

1  The panel or the board . . . shall set a release date unless

2  it determines that the gravity of the current convicted

3  offense or offenses, or the timing and gravity of current or

4  past convicted offense or offenses, is such that

5  consideration of the public safety requires a more lengthy

6  period of incarceration for this individual, and that a

7  parole date, therefore, cannot be fixed at this meeting.

8

9  The Ninth Circuit has held that section 3041(b) confers a

10  constitutionally protected liberty interest in parole.  Hayward v.

11  Marshall, 512 F.3d 536, 542 (9th Cir. 2008) ("Hayward"); Irons v.

12  Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) ("Irons"); Sass v. Calif.

13  Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) ("Sass");

14  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) ("Biggs").[6]

15

16  Due Process requires that there exist "some evidence" to support

17  a parole decision.  Irons, 505 F.3d at 851 ("At the time that Irons'

18  state habeas petition [challenging a 2001 denial of parole] was before

19  the state courts, the Supreme Court had clearly established that a

20  parole board's decision deprives a prisoner of due process . . . if

21  the board's decision is not supported by 'some evidence in the

22  record.'"); see also Hayward, 512 F.3d at 542 (applying "some

23  _____

24  [6]   Although Respondent argues to the contrary, this Court
has no authority to disregard the Ninth Circuit's clear holdings,

25  in Biggs, Sass, Irons and Hayward, that an inmate has a liberty
interest in parole.  See Hart v. Massanari, 266 F.3d 1155, 1170

26  (9th Cir. 2001) (district judge may not "disagree with his
learned colleagues on his own court of appeals who have ruled on

27  a controlling legal issue"); Zuniga v. United Can Co., 812 F.2d
443, 450 (9th Cir. 1987) ("[d]istrict courts are, of course,

28  bound by the law of their own circuit").

12

1    evidence" standard to parole denial); <u>Sass</u>, 461 F.3d at 1128-29 ("some

2    evidence" standard is "clearly established in the parole context");

3    <u>Powell v. Gomez</u>, 33 F.3d 39, 40 (9th Cir. 1994); <u>Perveler v. Estelle</u>,

4    974 F.2d 1132, 1134 (9th Cir. 1992); <u>Jancsek v. Oregon Bd. of Parole</u>,

5    833 F.2d 1389, 1390 (9th Cir. 1987) (citing <u>Superintendent,</u>

6    <u>Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445,

7    455 (1985)).   "To determine whether the some evidence standard is met

8    'does not require examination of the entire record, independent

9    assessment of the credibility of witnesses, or weighing of the

10   evidence.'"   <u>Sass</u>, 461 F.3d at 1128 (quoting <u>Superintendent,</u>

11   <u>Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. at

12   455-56).   The "some evidence" standard is "minimal," and "'the

13   relevant question is whether there is <u>any</u> evidence in the record that

14   could support the conclusion reached by the [Board].'"   <u>Sass</u>, 461 F.3d

15   at 1128 (quoting <u>Superintendent, Massachusetts Correctional</u>

16   <u>Institution, Walpole v. Hill</u>, 472 U.S. at 455-56; emphasis added).[7]

17   _____

18   [7]     Respondent's contention that the "some evidence"
     standard does not apply is without merit.  <u>See</u> <u>Hayward</u>, 512 F.3d
19   at 542; <u>Irons</u>, 505 F.3d at 851; <u>Sass</u>, 461 F.3d at 1128.  <u>Carey v.</u>
     <u>Musladin</u>, 127 S. Ct. 649 (2006), cited by Respondent, does not
20   "undercut the theory or reasoning underlying the prior circuit
     precedent in such a way that the cases are clearly
21   irreconcilable."  <u>See generally</u> <u>Miller v. Gammie</u>, 335 F.3d 889,
     900 (9th Cir. 2003) (en banc).  Indeed, the Ninth Circuit
22   implicitly rejected this argument in <u>Hayward</u>.  <u>See</u> <u>Hayward</u>, 512
     F.3d at 542.  <u>Hayward</u> applied the "some evidence" standard
23   despite the State's argument that no clearly established Supreme
     Court law endorsed the application of the "some evidence"
24   standard in the parole context.  <u>See</u> <u>Respondent-Appellee's Brief</u>,
     filed December 26, 2006, in <u>Hayward v. Marshall</u>, 9th Cir. case
25   number 06-55392, reproduced at 2006 WL 4054091; <u>see also</u> <u>Rose v.</u>
     <u>Kane</u>, 2008 WL 740311 (9th Cir. Mar. 18, 2008) (rejecting argument
26   that "some evidence" standard did not apply to parole
     proceedings).  Therefore, this Court remains bound by <u>Hayward</u>,
27                                                    (continued...)

28



13

1   State authorities' discretion in parole matters is "great" and

2   "involves the deliberate assessment of a wide variety of

3   individualized factors on a case-by-case basis, and the striking of a

4   balance between the interests of the inmate and the public."   In re

5   Powell, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

6   (internal quotations and citation omitted); see also Biggs, 334 F.3d

7   at 915 (California law allows the state authorities "to consider a

8   myriad of factors when weighing the decision of granting or denying

9   parole"); Glauner v. Miller, 184 F.3d 1053, 1055 (9th Cir. 1999)

10  (state authorities have "broad discretion" to determine whether "the

11  necessary [statutory] prerequisites are met") (quoting Board of

12  Pardons v. Allen, 482 U.S. 369, 376 (1987)).

13

14  As indicated above, California Penal Code section 3041(b)

15  provides that the Board "shall set a release date unless it determines

16  that the gravity of the current convicted offense or offenses, or the

17  timing and gravity of current or past convicted offense or offenses,

18  is such that consideration of the public safety requires a more

19  lengthy period of incarceration for this individual, and that a parole

20  date, therefore, cannot be fixed at this meeting."   Cal. Penal Code §

21  3041(b).   Thus, a finding of parole suitability must precede the

22  setting of a parole release date for a life prisoner.   See In re

23  Stanworth, 33 Cal. 3d 176, 183, 187 Cal. Rptr. 783, 654 P.2d 1311

24  (1982).

25  ///

26  ///

27

28  [7](...continued)
Irons and Sass.

14

1   Under applicable state regulations, "a life prisoner shall be
2   found unsuitable for and denied parole if in the judgment of the
3   [Board] the prisoner will pose an unreasonable risk of danger to
4   society if released from prison." Cal. Code Regs. tit. 15, § 2402(a).
5   In determining suitability for parole, the Board may consider, <u>inter</u>
6   <u>alia</u>, "the circumstances of the prisoner's social history; past and
7   present mental state; past criminal history, including involvement in
8   other criminal misconduct which is reliably documented; the base and
9   other commitment offenses, including behavior before, during and after
10  the crime; past and present attitude toward the crime; any conditions
11  of treatment or control, including the use of special conditions under
12  which the prisoner may safely be released to the community; and any
13  other information which bears on the prisoner's suitability for
14  release." <u>See</u> Cal. Code Regs. tit. 15, § 2402(b).

15

16      State prison regulations describe certain circumstances tending
17  to show unsuitability for release, described as "general guidelines,"
18  but also state that the importance of any circumstances or combination
19  of circumstances in a particular case is left to the judgment of the
20  Board.  Cal. Code Regs. tit. 15, §2402(c).  The regulations provide:

21

22      Circumstances tending to show unsuitability include:

23

24      (1) Commitment Offense.  The prisoner committed the offense
25      in an especially heinous, atrocious or cruel manner.  The factors
26      to be considered include:

27  ///
28  ///



15

1            (A) Multiple victims were attacked, injured or killed

2      in the same or separate incidents.

3

4            (B) The offense was carried out in a dispassionate and

5      calculated manner, such as an execution-style murder.

6

7            (C) The victim was abused, defiled or mutilated during

8      or after the offense.

9

10           (D) The offense was carried out in a manner which

11     demonstrates an exceptionally callous disregard for human

12     suffering.

13

14           (E) The motive for the crime is inexplicable or very

15     trivial in relation to the offense.

16

17         (2) Previous Record of Violence.  The prisoner on previous

18    occasions inflicted or attempted to inflict serious injury on a

19    victim, particularly if the prisoner demonstrated serious

20    assaultive behavior at an early age.

21

22         (3) Unstable Social History.  The prisoner has a history of

23    unstable or tumultuous relationships with others.

24

25         (4) Sadistic Sexual Offenses.  The prisoner has previously

26    sexually assaulted another in a manner calculated to inflict

27    unusual pain or fear upon the victim.

28  ///



1          (5) Psychological Factors.  The prisoner has a lengthy

2    history of severe mental problems related to the offense.

3

4          (6) Institutional Behavior.  The prisoner has engaged in

5    serious misconduct in prison or jail.

6

7  Cal. Code Regs. tit. 15, § 2402(c).

8

9    Circumstances tending to show suitability for parole include:

10  (1) the absence of a juvenile record; (2) a stable social history;

11  (3) signs of remorse; (4) a lack of any significant history of violent

12  crime; (5) the prisoner's age; (6) realistic parole plans; and

13  (7) institutional activities indicating an enhanced ability to

14  function within the law upon release.  Cal. Code Regs. tit. 15,

15  § 2402(d).

16

17    Upon a finding of suitability, the Board sets a "base term"

18  established solely on the gravity of the base crime, using a matrix of

19  base terms set forth in California Code of Regulations § 2403.  See

20  Cal. Code Regs. tit. 15, § 2403(a).

21

22  **II.  <u>Petitioner's Challenge to the Sufficiency of the Evidence Does</u>**

23      **<u>Not Merit Habeas Relief.</u>**

24

25    Petitioner challenges the sufficiency of the evidence to support

26  the denial of parole.  Petitioner contends, among other things, that

27  the evidence did not show that Petitioner committed the commitment

28  offense in an "especially heinous, atrocious or cruel manner," or in a

17



1  "dispassionate and calculated" or "execution style" manner, or that

2  the motive was "inexplicable" or "very trivial" (Petition, Ground One,

3  pp. 5, 5(a), 6; Traverse, p. 11).  Petitioner also asserts that his

4  disciplinary convictions were too remote in time to support the

5  Board's decision (Traverse, pp. 12-14).

6

7       The Superior Court rejected Petitioner's challenge to the

8  sufficiency of the evidence, concluding that "some evidence" existed

9  to support the Board's decision (Respondent's Lodgment 6).  The court

10 found no evidence in the record that the commitment offense included

11 an "exceptionally callous disregard for human suffering" or that the

12 motive was "inexplicable" or "very trivial," but noted that there were

13 multiple victims (id.).  The court also relied upon Petitioner's

14 disciplinary convictions, including his convictions for possession of

15 a weapon and conducting a business under his gang name, and

16 Petitioner's failure to undergo gang debriefing and use of his gang

17 name (id.).  In a brief order, the Court of Appeal agreed that there

18 was "some evidence" to support the Board's decision (Respondent's

19 Lodgment 8).

20

21      To the extent Petitioner contends the Board violated state law or

22 regulations, Petitioner is not entitled to habeas relief.  A federal

23 court may grant habeas corpus relief "only on the ground that [the

24 petitioner] is in custody in violation of the Constitution or laws or

25 treaties of the United States."  28 U.S.C. § 2254(a).  Mere errors in

26 the application of state law are not cognizable on habeas corpus.

27 Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

28 ///



1     Under the "some evidence" test, the issue is not whether the

2 evidence supported any particular factor regarding parole suitability,

3 but rather whether "some evidence" indicates the prisoner's release

4 unreasonably would endanger public safety.   See Hayward, 512 F.3d at

5 543.   The evidence before the Board amply supported the Board's

6 decision.   This evidence included: (1) the gang-related commitment

7 offense; (2) Petitioner's criminal history (particularly the gang-

8 related offenses committed only a month or two before the commitment

9 offense, involving Petitioner's theft of a woman's belongings while

10 one of Petitioner's companions raped the woman); (3) Petitioner's

11 prison disciplinary history (including gang-related possession of

12 weapons and an unauthorized attempt to run a business from prison);

13 (4) the nature of Petitioner's aborted prison-based business effort

14 (involving an attempt to obtain lists of citizens' names and

15 addresses, purportedly to run a direct mail business bearing

16 Petitioner's gang moniker, conceived while Petitioner was still

17 associated with a gang); and (5) Petitioner's patently untrue denial

18 that he had ever committed a crime against women.   See Rose v. Kane,

19 2008 WL 740311 (9th Cir. Mar. 18, 2008) (affirming denial of parole

20 based on commitment offense and petitioner's demeanor and

21 "demonstrated lack of insight" at parole hearing); Lewis v. Calif. Bd.

22 of Prison Terms, 2008 WL 186871 (9th Cir. Jan 18, 2008) (affirming

23 denial of parole based on petitioner's criminal history, failure to

24 pursue vocational training and self-help programs, and prison

25 disciplinary record); Wauls v. Muntz, 2007 WL 4165239 (9th Cir.

26 Nov. 26, 2007) (nature of commitment offense, criminal history, and

27

28



1  disciplinary history sufficient).[8]

3      Petitioner argues that the Board should have weighed more heavily

4  arguably positive factors (Petition, Ground Four, pp. 6, 6(a);

5  Traverse, pp. 14-17).  This Court cannot re-weigh the factors

6  supporting parole suitability and the factors supporting parole

7  unsuitability.  See Powell v. Gomez, 33 F.3d at 42; McElwee v. Hamlet,

8  2003 WL 21556945 at *3 (N.D. Cal. July 3, 2003); see also Crawley v.

9  Knowles, 235 Fed. App'x 563, 564 (9th Cir. 2007) ("The 'some evidence'

10  standard does not allow us to entertain Crawley's contentions

11  regarding how the Board evaluated the evidence it had before it when

12  it made its suitability determination. [citation]".).

14      Moreover, even if the Board made some insupportable findings, the

15  Court nevertheless must deny habeas relief where, as here, there

16  exists "some evidence" supporting the Board's findings of

17  unsuitability.  See Biggs, 334 F.3d at 916.

19      Petitioner appears to argue the Board erred by continuing to rely

20  on immutable factors, citing, inter alia, Biggs (Petition, pp. 5(a),

21  6(b); Traverse, pp. 17-19).  In dicta, the Biggs Court stated:

23      Over time, however, should Biggs continue to demonstrate

24      exemplary behavior and evidence of rehabilitation, denying

25      him a parole date simply because of the nature of Biggs'

---

27      [8]  The Court may cite unpublished Ninth Circuit opinions
28  issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir.
Rule 36-3(b); Fed. R. App. P. 32.1(a).



1        offense and prior conduct <u>would raise serious questions</u>

2        involving his liberty interest in parole. . . .

3

4        . . . A <u>continued</u> reliance in the future on an

5        unchanging factor, the circumstance of the offense and

6        conduct prior to imprisonment, runs contrary to the

7        rehabilitative goals espoused by the prison system and <u>could</u>

8        <u>result</u> in a due process violation.

9

10  <u>Biggs</u>, 334 F.3d at 916-17 (emphasis added).

11

12     As previously indicated, the Board did not rely solely on the

13  nature of the commitment offense to deny parole in the present case.

14  Therefore, the <u>Biggs</u> dicta would be inapplicable even if it were

15  otherwise persuasive or authoritative.  See <u>Withers v. Finn</u>, 2007 WL

16  2729078, at *6 (E.D. Cal. Sept. 18, 2007), <u>adopted</u>, 2007 WL 3293378

17  (E.D. Cal. Nov. 5, 2007) (distinguishing <u>Biggs</u> where denial of parole

18  additionally was based on petitioner's inadequate parole plans, and

19  thus was not based "<em>solely</em> on immutable factors"; original emphasis);

20  <u>Rose v. Kane</u>, 2006 WL 3251735, at *11 (N.D. Cal. Nov. 2, 2006), <u>aff'd</u>,

21  <u>Rose v. Kane</u>, 2008 WL 740311 (9th Cir. Mar. 18, 2008) (<u>Biggs</u> dicta

22  inapplicable where Board did not base denial solely on gravity of

23  commitment offense, but also relied on fact that petitioner needed

24  more self-help and therapy).

25

26     Moreover, an analysis of Ninth Circuit cases subsequent to <u>Biggs</u>

27  demonstrates that Petitioner's circumstances cannot justify habeas

28  relief under the <u>Biggs</u> dicta.  In <u>Sass</u>, the Ninth Circuit held that



1  the gravity of the commitment offense (second degree murder) and the

2  evidence of Sass' prior offenses demonstrated the requisite "some

3  evidence" to support the Board's denial of parole.  *Sass*, 461 F.3d at

4  1129.  Acknowledging the *Biggs* dicta, the *Sass* Court indicated

5  nevertheless that it was not the Court's function "to speculate about

6  how future parole hearings should proceed."  *Id.*

7

8       In *Irons*, the Board deemed the petitioner, a second degree

9  murderer, unsuitable for parole despite his exemplary behavior in

10  prison.  On federal habeas, Irons argued, *inter alia*, that under the

11  *Biggs* dicta the Board had violated Due Process by relying repeatedly

12  on the nature of the commitment offense to deny parole.  Relying on

13  *Sass*, the Ninth Circuit rejected this argument.  *Irons*, 505 F.3d at

14  853-54.  The Court observed, *inter alia*, that the crime in *Sass* was

15  less callous than that in *Irons*, and that the petitioners in *Biggs*,

16  *Sass* and *Irons* had not served the minimum term to which they had been

17  sentenced at the time of the Board's denial of parole.  *Id.*  However,

18  the Court carefully limited its holding to the "particular

19  circumstances" of the offenses in *Biggs*, *Sass* and *Irons*.  *Id.*  ("All

20  we held in [*Biggs* and *Sass*], and all we hold today, . . . is that,

21  given the particular circumstances of the offenses in these cases, due

22  process was not violated when these prisoners were deemed unsuitable

23  for parole prior to the expiration of their minimum terms."); *see*

24  *Biggs v. Schwarzenegger*, 2007 WL 1140721, at *3 n.2 (E.D. Cal.

25  Apr. 17, 2007) ("*Irons* did not decide that reliance on unchanging

26  factors after the minimum term had been served was unlawful.  We

27  simply know that 'maybe' that will be the case.").

28  ///

1    The day after the original Ninth Circuit decision in <u>Irons</u>,[9] the

2  Circuit reversed a district court's grant of parole eligibility in

3  <u>Kunkler v. Muntz</u>, 226 Fed. App'x 669 (9th Cir. 2007).  In that case,

4  after the Board granted parole at the petitioner's eighth parole

5  hearing, the Governor reversed the decision, citing the gravity of the

6  commitment offense and the petitioner's criminal history.  <u>Id.</u> at *1.

7  The Superior Court held the Board could not rely on the petitioner's

8  criminal history to deny parole because there was no evidence that any

9  of the petitioner's prior crimes involved violence.  <u>Id.</u>  On federal

10  habeas review, the district court granted the petition, applying the

11  <u>Biggs</u> dicta.  The Ninth Circuit reversed, holding that there was some

12  evidence to support the Board's decision, and quoting <u>Sass</u>' admonition

13  that "'it is not [this court's] function to speculate about how future

14  parole hearings could proceed.'"  <u>Id.</u> at *2 (citation omitted;

15  original brackets).

16

17    In <u>Hayward</u>, the Ninth Circuit cited the <u>Biggs</u> dicta and granted

18  habeas relief to a sixty-four-year-old state prisoner who had been

19  incarcerated almost thirty years for second degree murder.  <u>Hayward</u>,

20  512 F.3d at 545-48.  In doing so, however, the <u>Hayward</u> Court expressly

21  confined its ruling to the "unusual" and "extraordinary" circumstances

22  of that case.  <u>Id.</u> at 546.  Those circumstances, emphasized repeatedly

23  by the <u>Hayward</u> Court, included not only Hayward's age and the

24  remoteness of his crime, but also the significant provocation for the

25

26  _____

27    [9]   The original <u>Irons</u> opinion, later amended in respects
    immaterial to the present proceeding, was filed on March 6, 2007.

28  <u>See</u> <u>Irons v. Carey</u>, 479 F.3d 658 (9th Cir. 2007), <u>amended</u>, 505
    F.3d 846 (9th Cir., July 13, 2007) .



crime (the victim had attacked Hayward's girlfriend) and the Board of

Prison Terms' successive, favorable discretionary decisions (the Board

twice had found Hayward suitable for parole).  Id. at 544-47.  No such

"unusual" or "extraordinary" circumstances attend the present case.


Nothing in Sass, Irons, Kunkler or Hayward alters this Court's

conclusion that a grant of habeas relief to Petitioner under Biggs

dicta is not supported, much less compelled, by any "clearly

established" Supreme Court law.[10]  Section 2254(d)(1)'s reference to

"clearly established federal law" "refers to holdings, as opposed to

the dicta, of [Supreme Court] decisions."  Williams v. Taylor, 529

U.S. 362, 365 (2000).  The statements from Biggs quoted above are the

dicta of a Court of Appeals, not the Supreme Court.  Indeed, in

Culverson v. Davison, 2007 WL 1663682 (9th Cir. June 8, 2007), pet.

for cert. filed (Feb. 12, 2008) (No. 07-9372) the Ninth Circuit

expressly ruled that "[t]here is no 'clearly established federal law

as determined by the Supreme Court of the United States' that limits

the number of times a parole board may deny parole to a murderer based

on the brutality and viciousness of the commitment offense."  Id. at

*1 (footnotes omitted).  The Court ruled that "[t]he dicta in Ninth

_____

[10]    One might conclude from Sass, Irons, Kunkler and
Hayward that, except with respect to the extraordinary
circumstances found in Hayward, there does not exist any clearly
established Ninth Circuit law in this area (much less any clearly
established Supreme Court law).  See Biggs v. Schwarzenegger,
2007 WL 1140721, at *3-4 (discussing lack of guiding standards in
Sass and Irons); see also Kleve v. Kane, 2007 WL 879069, at
*6 (N.D. Cal. Mar. 21, 2007) (noting that the Ninth Circuit has
not specified the number of denials or the length of time served
beyond the minimum sentence that might trigger a Due Process
violation).



24

Circuit cases like [Biggs] are not holdings of the Supreme Court, as required by <u>Carey v. Musladin</u>, 549 U.S. ____, at *5-7 [127 S. Ct. 649] (2006), and <u>Shriro [sic] v. Landrigan</u>, ___ U.S. ___, 2007 WL 1387923, at *8-9 (May 14, 2007) [127 S. Ct. 1933 (2007)]." <u>Id.</u>; <u>see also</u> <u>Fernandez v. Kane</u>, 2006 WL 3041083, at *3 (N.D. Cal. Oct. 24, 2006) (<u>Biggs</u> dicta not clearly established federal law as set forth by the Supreme Court).

In sum, the state courts' rejection of Petitioner's claim that the evidence was insufficient to support the Board's decision was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on his challenge to the sufficiency of the evidence.

**III. <u>Petitioner's Claim That the Board Gave No More than "Pro Forma" Consideration to Petitioner's Suitability for Parole Does Not Merit Habeas Relief.</u>**

Petitioner contends he received only a "pro forma" parole hearing (Petition, Ground Two, pp. 5, 5(a)).  This contention lacks merit.

Due process requires that the state provide a prisoner with an opportunity to be heard and, if parole is denied, a statement of reasons for the denial.  <u>Greenholtz</u>, 442 U.S. at 16; <u>Irons</u>, 506 F.3d at 955 ("Under <u>Greenholtz</u>, all that is required for due process is 'an opportunity to be heard' and 'inform[ing] the inmate in what respects he falls short of qualifying for parole ... as a guide to the inmate



1   for his future behavior'") (footnote omitted); <u>Bermudez v. Duenas</u>, 936

2   F.2d 1064, 1066 (9th Cir. 1991).  Petitioner received these procedural

3   safeguards.  <u>See</u> <u>Rose v. Kane</u>, 2006 WL 3251735, at *11 (N.D. Cal.

4   Nov. 2, 2006), <u>aff'd</u>, <u>Rose v. Kane</u>, 2008 WL 740311 (9th Cir. Mar. 18,

5   2008) (petitioner did not receive a "pro forma" adjudication from the

6   Board "because he had an opportunity to be heard and the Board

7   informed him as to how he fell short of qualifying for parole").

8

9       Additionally, the record belies any assertion that the Board did

10  not afford Petitioner individualized consideration.  The Board

11  considered many factors, as discussed above, and allowed Petitioner

12  and his counsel to address the issue of parole suitability.  The

13  Board's decision shows it denied parole based on Petitioner's

14  particular circumstances.  Neither the hearing nor the decision was

15  "pro forma."

16

17      For the foregoing reasons, the state courts' rejection of this

18  claim was not contrary to, or an objectively unreasonable application

19  of, any clearly established Federal law as determined by the United

20  States Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner is not

21  entitled to habeas relief on this claim.

22

23  IV.  <u>**Petitioner's Claim That the Board Assertedly Abused Its**</u>

24       <u>**Discretion By Disregarding the Matrix Does Not Merit Habeas**</u>

25       <u>**Relief.**</u>

26

27      Petitioner's claim that the Board allegedly disregarded the

28  matrix of base terms set forth in California Code of Regulations



1  section 2403 does not state any cognizable claim for habeas relief.

2  As indicated above, habeas relief is unavailable for violations of

3  state law.  See Estelle v. McGuire, 502 U.S. at 67-68; Eccher v.

4  Mendoza-Powers, 2007 WL 867985, at *12 n.3 (E.D. Cal. Mar. 20, 2007),

5  adopted, 2007 WL 1302490 (E.D. Cal. May 3, 2007) (claims that Board

6  failed to engage in comparative analysis and failed to set a parole

7  date within the sentencing matrix presented only claims of state law

8  error not cognizable on federal habeas).  In any event, as indicated

9  above, under California law the Board does not consider the sentencing

10  matrix until the Board deems an inmate suitable for parole.  See Cal.

11  Code Regs. tit. 15, § 2403(a); In re Dannenberg, 34 Cal. 4th 1061,

12  1091, 23 Cal. Rptr. 3d 417, 104 P.3d 783 (2005), cert. denied, 546

13  U.S. 844 (2005); see also Sass, 461 F.3d at 1132 ("The matrix is

14  intended to ensure sentencing uniformity among those who commit

15  similar crimes. [citation].  Such considerations are, of course,

16  inapplicable in the case of prisoners deemed unsuitable for parole.

17  [citation]."); Ramos v. Kane, 2007 WL 1232052, at *4 (N.D. Cal.

18  Apr. 26, 2007) ("going straight to the matrix to calculate the

19  sentence puts the cart before the horse because it ignores critical

20  language in the relevant statute and regulations that requires the

21  prisoner first to be found suitable for parole").

22

23      In sum, the state courts' rejection of this claim was not

24  contrary to, or an objectively unreasonable application of, any

25  clearly established Federal law as determined by the United States

26  Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

27  to habeas relief on this claim.

28  ///



27

1

**RECOMMENDATION**

2

3        For the foregoing reasons, IT IS RECOMMENDED that the Court issue

4   an Order: (1) approving and adopting this Report and Recommendation;

5   and (2) denying and dismissing the Petition with prejudice.

6

7        DATED:   April 15, 2008.

8

9                              _____/S/_____
                                        CHARLES F. EICK
10                             UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.